This case concerns alleged breaches of contract, express warranty, and implied warranty of fitness for a particular purpose. The issues presented are whether the trial court erred in: (1) failing to direct a verdict for the defendants, Ricwil, Inc., and Dowdy Associates, Inc. ("Dowdy"), (2) failing to enter a JNOV for Ricwil and Dowdy, and (3) failing to give a requested jury instruction relating to nominal damages or to grant a motion for remittitur.
In May 1982, Management Builders, Inc., subcontracted with Air Constructors, Inc., for Air Constructors to install a boiler room and underground piping system on a National Guard armory project at Fort McClellan, Alabama. After receiving specifications from Management Builders, Air Constructors contacted Dowdy, a piping supplies retailer and sales representative for Ricwil, to order pipe that would meet contract specifications. Dowdy submitted a formal submittal or bid that recommended to Air Constructors that it use Ricwil's "Copper-Gard" system for the project. Along with the formal proposal, Dowdy sent Air Constructors a product brochure and an installation manual. Ricwil's Copper-Gard system consisted of lengths of copper pipe, pre-insulated with a special foam covering and special "O-ring" couplings for connecting the lengths of pipe. Relying on Dowdy's expertise as a pipe supplies retailer, and on the project engineer's approval, Air Constructors ordered a large quantity of the Copper-Gard pipe and sufficient Copper-Gard "O-ring" couplings for the project. The contract specifications called for pipe that would withstand a water temperature of up to 250 degrees Fahrenheit. The product brochure contained statements to the effect that the Copper-Gard pipe would withstand such a temperature.
After the entire piping system was put together, Air Constructors tested the pipe for leaks, using cold water. No major leaks occurred, so Air Constructors covered the trenches containing the piping system. In October 1983, the boiler portion of the system was completed, and hot water was placed into the piping system. Leaks occurred almost immediately. Air Constructors returned to the work site, excavated numerous visible leak areas, and repaired the pipe. At all excavated areas, separated "O-ring" couplings were found. After making several repairs to the system, Air Constructors notified Ricwil and Dowdy of the problems it was experiencing, and representatives from both companies visited the work site.
Air Constructors sued Dowdy and Ricwil, seeking compensation for the cost of the repairs made to the system. Air Constructors alleged breach of contract, breach of an implied warranty of fitness for a particular purpose, and breach of an express warranty. After the case was filed, Air Constructors merged with S.L. Pappas and Company, Inc. ("Pappas"), and Pappas was substituted as the proper party plaintiff. Dowdy cross-claimed against Ricwil, seeking indemnity for any liability found against it. After evidence was presented, both Ricwil and Dowdy filed motions for directed verdicts. The trial court denied these motions, and the case was submitted to the jury. The jury returned a verdict for Pappas, awarding $22,500.81 in damages, and the trial court entered a judgment based on that verdict. The trial court also entered a judgment for Dowdy on its cross-claim. Both Dowdy and Ricwil filed post-judgment motions for JNOV, or in the alternative, for new trial, or in the alternative, for remittitur. The trial court denied these motions.
Ricwil and Dowdy both contest the trial court's denial of their motions for directed verdict and for JNOV, or new trial, or remittitur. Both Ricwil and Dowdy argue, in essence, that the legal theories used by Pappas are inapplicable to the facts of this case and that the trial court erred in submitting the case to the jury. We deem *Page 1129 
these arguments to be challenges to the trial court's legal conclusions, and, in certain instances, to the sufficiency of Pappas's evidence to support the given legal theory.
Initially, we note that our standard of review is different as to each of these types of challenges. For a sufficiency-of-the-evidence challenge, the ultimate question is whether the nonmovant has presented sufficient evidence to allow submission of the issue to the jury for a factual resolution. See, Rule 50(a), Ala.R.Civ.P.; Alabama Power Co. v.Williams, 570 So.2d 589 (Ala. 1990); John R. Crowley Bros.,Inc. v. Brown, 569 So.2d 375, 376 (Ala. 1990); J. Hoffman S. Guin, Alabama Civil Procedure § 8.37 (1990). Because this case was pending on June 11, 1987, the applicable sufficiency standard is the "scintilla evidence rule." See, § 12-21-12(e), Ala. Code 1975; and Melton v. Perry County Bd. of Educ.,562 So.2d 1341 (Ala.Civ.App. 1990). The "scintilla evidence rule" requires submission of an issue to the jury if there is any evidence supporting the inference the nonmovant wishes the jury to draw; or, stated differently, if there is so much as "a mere gleam, glimmer, spark, the least particle or the smallest trace of evidence" supporting that inference, then the issue must be submitted to the jury. Allstate Enterprises, Inc. v. Alexander,484 So.2d 375, 376-7 (Ala. 1985); and see, C. Gamble, McElroy'sAlabama Evidence § 448.01 at 987 (4th ed. 1991). Also, this Court must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable inferences as the jury would be free to draw from the evidence. Williams v.Allstate Ins. Co., 591 So.2d 38 (Ala. 1991).
For a strictly legal challenge, however, no presumption of correctness or favorable initial view applies. H.C. SchmiedingProduce Co. v. Cagle, 529 So.2d 243, 247 (Ala. 1988). Rather, "we [must] review any rulings purely on matters of law without any presumption of correctness on the part of the trial court." Id.
 The Breach of Contract Claim
Pappas contended at trial that Ricwil and Dowdy breached their contractual obligation to it by delivering goods that did not meet the project's specifications. Specifically, Pappas argued that the Copper-Gard system could not withstand a water temperature of up to 250 degrees Fahrenheit. Neither Pappas nor Ricwil addresses the breach of contract issue on appeal, so we deem it waived as to them. Dowdy, however, argues that there was no contract between it and Pappas because, it says, there was no consideration flowing from Pappas to it.
Dowdy cites Shirley v. Lin, 548 So.2d 1329, 1332 (Ala. 1989), for the proposition that all contracts require five elements, all of which must exist for a contract to be enforceable. These elements are: (1) an agreement, (2) consideration, (3) two or more contracting parties, (4) a legal object, and (5) capacity. Id. We find nothing in the law of sales that would change the necessity for the above elements. See, §§ 7-1-103 and7-2-103(4), Ala. Code, 1975. We do find, however, at least a scintilla of evidence of each element of a contract listed above, including the element of consideration.
On direct examination, Sonny Marshton, a representative of Pappas, was asked, "Did you purchase the piping from Dowdy 
Associates since they were the low bidder?" He replied, "Yes, sir." This would amount to at least a scintilla of evidence of consideration flowing to Dowdy.
Additionally, Dowdy argues that the trial court erred in submitting Pappas's breach of contract theory against it to the jury because, it says, Dowdy was, at most, an agent of Ricwil, and, it says, the law is clear that "The general rule in Alabama concerning liability of an agent for the breach of contract entered on behalf of a disclosed principal is thatthe agent binds either the principal or himself to thecontract, but not both." Quoting Shirley, 548 So.2d at 1333. (Emphasis supplied; citations omitted.) We find, however, that there was sufficient conflict in the evidence relative to the issue of agency to make this a factual issue for the jury. Dowdy stresses that the documentation and transfer of money in this case was between Pappas and Ricwil, with Dowdy merely acting as a sales representative for Ricwil. The evidence *Page 1130 
is clear, however, that Pappas dealt directly with Dowdy in asking for the product submittal, and that any reliance by Pappas was on Dowdy's expertise and not on Ricwil's. Given this conflict, the trial court did not err in submitting the breach of contract count to the jury.
 The Implied Warranty of Fitness Claim
Pappas contended at trial that the same course of conduct by Ricwil and Dowdy that allegedly breached their contract with Pappas also breached an implied warranty of fitness for a particular purpose. That is, Pappas contended that Ricwil and Dowdy knew or had reason to know that Pappas intended to use the Copper-Gard system pipe to supply heated water to various buildings at the Fort McClellan project.
Pappas has failed to address the issue of an implied warranty of fitness for a particular purpose. Ricwil, however, argues that it excluded any warranty of fitness for a particular purpose and that it did so in conspicuous, written terms. We are convinced that Ricwil failed to comply with the requirements of § 7-2-316(2), and, thus, failed to exclude the warranty of fitness for a particular purpose.
On the face sheet of the Copper-Gard installation manual, admittedly received and read by Sonny Marshton, a representative of Pappas, was the following exclusion of warranty: "This express warranty is in lieu of and excludes all other warranties expressed or implied, including, without limitation, merchantability or fitness for a particular purpose."
Section 7-2-316(2) states, in pertinent part, "[T]o exclude or modify any implied warranty of fitness [for a particular purpose] the exclusion must be by a writing and conspicuous." (Emphasis supplied.) The exclusion here is clearly in writing.
Section 7-1-201(10) defines "conspicuous" as:
 "A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous.' Whether a term or clause is 'conspicuous' or not is for decision by the court."
(Emphasis supplied).
Here, the exclusion is on the front page of the installation manual in a section labelled "Warranty." Although the label "Warranty" is conspicuous, the actual exclusion is merely in normal type. The exclusion is not in "larger or other contrasting type or color," and it is not "so written that a reasonable person against whom it is to operate ought to have noticed it." The exclusion here, then, was clearly inconspicuous, and thus, did not work to exclude any warranty of fitness for a particular purpose.
In addition to the exclusion, both Ricwil and Dowdy argue that Pappas did not actually rely on their skill or judgment in selecting the Copper-Gard system, but rather relied solely on the project engineer's skill and judgment. While we agree that there is evidence to this effect, we also find at least a scintilla of evidence to support a finding of reliance. Specifically, Sonny Marshton testified:
 "Q: Okay, Mr. Marshton. If you would, look at that [plaintiff's exhibit 3] and tell me what that is.
"A: This is a submittal on the job.
"Q: What is a submittal?
 "A: This is a — submittal is about the pipe, tells you what, how it's made, the jacket size, and all that. It's more or less of a brochure to tell you what they're furnishing.
 "Q: All right. And Dowdy Associates furnished that to you; Mr. Moore [of Dowdy Associates] furnished it to you?
"A: Yes, sir, I think Mr. Moore, yes, sir.
 "Q: Now, when you were discussing this with Mr. Moore, did you request any particular brand of piping or any particular kind of piping?
 "A: No, sir, just what the specifications called for."
R. at 27-28. (Emphasis supplied.)
The above testimony constitutes at least a scintilla of evidence that Pappas relied *Page 1131 
upon Dowdy's skill and judgment (and that of Ricwil as Dowdy's principal) in selecting proper pipe for the project.
Thus, the trial court did not err in submitting to the jury the claim alleging a breach of an implied warranty of fitness for a particular purpose, because the warranty was not excluded by a conspicuous writing, and because Pappas submitted sufficient evidence of reliance.
 The Express Warranty Claim
At the trial level, Pappas contended that Ricwil and Dowdy expressly warranted that the Copper-Gard would withstand water temperatures up to 250 degrees Fahrenheit. Ricwil and Dowdy argued that only one express warranty was made: a warranty against defects in material and workmanship found on the face sheet of the installation manual. Further, Ricwil and Dowdy argued that this warranty against defects in material and workmanship was limited to one year after shipment of the pipe. We conclude that two express warranties were made, with the one-year limitation applying only to the warranty against defects.
Section 7-2-313(1)(b) states, "Express warranties by the seller are created as follows: Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." The product brochure sent to Pappas as part of Dowdy's submittal states, in large bold letters: "Preinsulated Piping System for Buried Hot and Chilled Water, Domestic Hot Water and Condensate Lines to 250 [degrees] F[ahrenheit]." Further, a more detailed description of the Copper-Gard system includes the following: "Pressure-Temperature Rating: 150 psig continuous working pressure through a temperature range of -40 [degrees] F[ahrenheit] to [plus] 250 [degrees] F[ahrenheit]." These descriptions of the Copper-Gard system became part of the basis of the bargain because Pappas specifically requested pipe that would meet contract specifications. Sonny Marshton testified that contract specifications called for pipe that would withstand water temperatures of at least 240 degrees Fahrenheit. (R. at 45.) Thus, it is clear that an express warranty as to temperature was made, in addition to the warranty as to defects in material and workmanship.[1]
Section 7-2-316(1) states:
 "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (section 7-2-202) negation or limitation is inoperative to the extent that such construction is unreasonable."
Consistent with the mandate of § 7-2-316(1), it is reasonable to conclude that two warranties have been made here: one as to defects in material and workmanship, which was limited by the one-year provision in the installation manual, and one as to the Copper-Gard system's ability to withstand hot water temperatures, which was not limited. Thus, the trial court did not err in submitting the breach-of-express-warranty claim to the jury.[2]
 The Damages Issue
Ricwil and Dowdy argue that the evidence proffered by Pappas to support its damages claims was speculative and called for conjecture on the jury's part. Also, both argue that the evidence presented included repairs made to pipe not made or *Page 1132 
sold by Ricwil or Dowdy. Both Ricwil and Dowdy assert that the trial court erred in not instructing the jury that only nominal damages could be awarded, or in not remitting the damages award to $1.00, because of what they call the speculative nature of Pappas's evidence. We conclude that the evidence proffered by Pappas as to damages provided the necessary foundation upon which the jury could reasonably estimate the amount of damages and make an award. Further, we conclude that a reasonable basis existed by which the jury could have offset the repairs made to another supplier's pipe, or by which the jury could have concluded that the repairs to the other supplier's pipe was necessitated by the failure of the Copper-Gard pipe. Thus, we conclude that no instruction or remittitur was necessary.
The rule in Alabama is that "damages for breach of contract need not be assessed with mathematical precision." UnitedBonding Ins. Co. v. W.S. Newell, Inc., 285 Ala. 371, 380,232 So.2d 616, 624 (1969); and see, M.C. West, Inc. v. Battaglia,386 So.2d 443, 443 (Ala.Civ.App. 1980); Brendle FireEquipment, Inc. v. Electronic Eng'rs Inc., 454 So.2d 1032, 1034
(Ala.Civ.App. 1984); and Berry v. Morris, 541 So.2d 569, 569
(Ala.Civ.App. 1989) (all quoting the contractual damages rule from United Bonding). The law as to contractual damages has been further stated as:
 "[T]he uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to its amount and . . . where it is reasonably certain that damage has resulted, mere uncertainty as to the amount will not preclude the right to recovery or prevent a jury decision awarding damages. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of the damage are not capable of exact and accurate proof. Under such circumstances, all that can be required is that the evidence — with such certainty as the nature of the particular case may permit — lay a foundation which will enable the trier of facts to make a fair and reasonable estimate of the amount of damage. The plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss."
United Bonding, 285 Ala. at 380, 232 So.2d at 624. (Emphasis supplied.)
Here, Pappas submitted the testimony of Cleo Peznell, Pappas's president and payroll and accounting officer, as well as various receipts and payroll timesheets to support its damages. Given the unexpected nature of the problems encountered, this was the best evidence available to Pappas to prove its damages. This evidence was certainly sufficient to lay a foundation on which the jury could reasonably estimate a proper amount of damages to award. Further, Mr. Peznell testified that of the nearly 5000 feet of pipe used on the Fort McClellan job only 180 feet of it was not Copper-Gard. Thus, the jury was afforded a rational basis on which to apportion damages, if it concluded that the Copper-Gard system's failure did not result in problems requiring repair to the non-Copper-Gard pipe. In sum, we find no error on the damages issue.
Based on the foregoing, we affirm the judgment of the trial court entered on the jury verdict.
AFFIRMED.
HORNSBY, C.J., and SHORES, HOUSTON and KENNEDY, JJ., concur.
[1] We note that Dowdy argues that the trial court erred in submitting the express warranty theory to the jury as against it because, it argues, it was not a "seller" and it did not make the written descriptions of the Copper-Gard system contained in the product brochure. To the extent that submission of this theory to the jury against Dowdy was error, we deem it merely harmless error, given the trial court's entry of a judgment for Dowdy on its cross-claim against Ricwil. See, Ala.R.App.P. 45. Of importance here is the fact that neither Ricwil nor Dowdy appeals the trial court's judgment as to the cross-claim.
[2] We note that neither Ricwil nor Dowdy argues that the exclusion language in the warranty against defects excluded all other possible express warranties. This approach is indeed wise, given Comment 4 to § 7-2-313, Ala. Code 1975, which states, in pertinent part:
 "[A] contract is normally a contract for a sale of something describable and described. A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligation with respect to such description and therefore cannot be given literal effect under Section 7-2-316.
 "This is not intended to mean that the parties, if they consciously desire, cannot make their own bargain as they wish. But in determining what they have agreed upon good faith is a factor and consideration should be given to the fact that the probability is small that a real price is intended to be exchanged for a pseudo-obligation." *Page 1133