**Amber L. HOBBS and Alex Manci, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No. Civ.A. 99–A–915–N.

United States District Court, M.D. Álabama, Northern Division.

March 16, 2001.

---

J. Callen Sparrow, Sparrow & Lavette, Birmingham, AL, Steven A. Martino, Taylor Martino & Hedge, Mobile, AL, John Walter Sharbrough, III, M. Stephen Dampier, Powell D. Waite, Jr., The Sharbrough Law Firm, Mobile, AL, Andre P. LaPlace, Baton Rouge, LA, Patrick W. Pendley, Plaquemine, LA, for Plaintiffs.

Mac M. Moorer, Anne Sikes Hornsby, Lightfoot, Franklin & White, L.L.C., Birmingham, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. *FACTS AND PROCEDURAL HISTORY*

This case is before the court on a Motion to Dismiss, which has been converted by Order of this court into a Motion for Summary Judgment, filed by the Defendant, General Motors Corporation ("GM") on March 7, 2000 (Do.# 36) as to Count I of the Second Amended Complaint, and GM's Supplemental Motion for Summary Judgment on Count I of the Second Amended Complaint (Do.# 107).

The Plaintiffs originally filed this case on August 25, 1999. The Plaintiffs subsequently filed a First and Second Amended Complaint. In the Second Amended Complaint, the Plaintiffs bring claims for breach of contract (Count I), unjust enrichment (Count II), breach of the implied warranty of merchantability under Uniform Commercial Code ("U.C.C.") statutes and the Louisiana Civil Code (Count III), and negligent, reckless or willful misrepresentation (Count IV).

On December 28, 2000, the Court denied in part and granted in part GM's initial Motion to Dismiss, which was converted into a Motion for Summary Judgment. The court concluded that the Plaintiffs had alleged facts and made arguments to support what was in essence a breach of express warranty claim, although the Plaintiffs had not explicitly described the claim as an express warranty claim in the Complaint as amended. Rather than deny GM's motion as to this claim, based solely on the fact that GM had not advanced arguments with regard to an express warranty claim, the court gave GM additional time in which to provide arguments in support of its Motion for Summary Judgment as to an express warranty claim, and gave the Plaintiffs time in which to respond to such a Motion.[1]

The Plaintiffs' claims in this case center around their contention that GM misrepresented the nature of the spare tire with which it equipped the Chevrolet Impala SS ("Impala") during the years 1994–1996. Amber L. Hobbs ("Hobbs") bought her Impala, VIN # 1G1BL52P4SR125937, in January of 1995 from a GM dealer. Alex Manci ("Manci") bought his Impala, VIN # 1G1BL52P8TR111637, in October of 1995 from a GM dealer.

The window stickers on the Impalas listed a "full size spare" as a feature of the

---

1. The court has addressed the jurisdictional question raised by the Plaintiffs in their response in a separate Order filed on this date.

car under the heading of "Standard Vehicle Price Options Installed by Manufacturer." The spare tire, which is stored in the Impala trunk, is an Ameri–Tech ST P215/75R15 BW 15 inch tire manufactured by Continental General Tire. The axle tires on the Impala are P255/502R17 17 inch tires manufactured by B.F. Goodrich. The Plaintiffs also point out that the Impala owner's manual advises against the mixing of tires of different sizes. The owner's manual also includes a diagram which shows how to include the spare tire in the regular tire rotation pattern. It is these statements which the Plaintiffs have asserted were breached by GM.

## II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. *DISCUSSION*

In initially ruling on GM's Motion for Summary Judgment, the court, relying on *Rhode v. E & T Investments, Inc.*, 29 F.Supp.2d 1298 (M.D.Ala.1998), concluded that the Plaintiffs had not stated a claim for breach of contract, but instead were asserting a claim for breach of an express warranty. In its supplemental brief, GM urges the court not to recast this claim, stating that up until now it has only been defending against implied warranty claims and a breach of contract claim. The court notes that it was not its intention to create a new claim, but rather to identify more accurately the label for the claim which the Plaintiffs were alleging. It was this court's hope that the parties, when given the opportunity to move for summary

judgment as to an express warranty claim and to defend against such a motion, would move away from the previous focus on the lack of a contract per se as between GM and the Plaintiffs, and would instead explore whether liability can be imposed on a manufacturer on an express warranty outside of the general written warranty against defects in workmanship and materials. While GM has advanced grounds for summary judgment which relate to express warranties, GM has not examined the basis for liability as against a manufacturer on an express warranty theory outside of the general written warranty against defects in workmanship and materials. This court will, therefore, engage in an examination of this area of law in an attempt to determine whether such a theory is recognized under the law and whether the Plaintiffs have created a question of material fact sufficient to preclude summary judgment on an express warranty claim.

The court will begin with the claim brought by Plaintiff Hobbs, which the parties do not dispute is governed by Alabama law.

Under the Alabama Code:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

*Ala.Code* § 7–2–313.

When courts apply such statutory language to statements made to buyers to determine whether an express warranty has been created, they often focus on the difference between statements of fact and statements of opinion or mere "puffing." *See* 1 James J. White & Robert S. Summers, Uniform ˙ Commercial Code § 9–2 (4th ed.1995) (collecting cases which analyze the difference between a statement that is a statement of fact and a statement which is mere "puffing" in deciding whether an express warranty has been made). If the statements are statements of fact, and not mere "puffing," courts have interpreted those statements to be express warranties. *Id.* The United States Supreme Court has explained, in the context of determining whether an express warranty claim is preempted by federal law, that under a state statute which provides that an express warranty is created if it is an affirmation of fact which becomes part of the basis of the bargain, advertising by a manufacturer gives rise to an express warranty that is imposed, not by state law, but by the manufacturer itself. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 525, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

■ These concepts have been applied by the Alabama Supreme Court in recognizing that affirmative statements made in a product brochure can constitute an express warranty. *See Ricwil, Inc. v. S.L.*

*Pappas and Company, Inc.,* 599 So.2d 1126 (1992). In *Ricwil,* the manufacturer had given a written, general warranty in the installation manual against defects in materials and workmanship, but had also made a statement in a product brochure that the equipment at issue could withstand certain temperatures. *Id.* at 1131. The court found evidence that the statement as to temperature became part of the basis of the bargain, and concluded that an express warranty as to temperature was made in addition to the general warranty against defects in materials and workmanship. *Id.* It is clear, therefore, that a statement of fact which becomes a part of the basis of the bargain between the buyer and seller can be actionable as an express warranty, even if it is separate from the express warranty against defects.

The type of statement at issue in this case, that is, the statement in the window sticker that the Impala was equipped with a "full size spare," and possibly the diagram in the Owner's Manual indicating that the spare tire could be included in a regular tire rotation pattern, could constitute express warranties under this statutory provision. In other words, the statements are statements of fact, and if they became a part of the basis of the bargain, could be express warranties. There is also evidence, at least with regard to the statement on the window sticker, that the statement became a part of the basis of the bargain, as Manci has stated in an affidavit that he relied on the representation that the Impala was equipped with a full-size spare. Such evidence, while subject to credibility determinations by the trier of fact at trial, creates a question of fact as to reliance sufficient to establish that the representation was a basis of the bargain. *See Rudder v. Kmart Corp.,* 1997 WL 907916, No. 97–0272–BH–S (S.D.Ala. Oct. 15, 1997) (indicating that reliance is sufficient, if not necessary, to prove that the statement of fact became a part of the basis for the bargain under Alabama law).

The analysis in this case is complicated, however, by the fact that, as GM points out, GM is not a seller of the Impala SS automobiles. The statutory provision which would allow for the "full size spare" statement to be identified as a basis for liability in contract, rather than just in tort, governs "sellers" and does not expressly apply to GM. There is support for the idea, however, that such liability can still be imposed on what the literature interpreting the UCC calls a "remote manufacturer." *See* E. Berton Spence, "Freedom of Warranty: The Case Against Application of Alabama's UCC to Express Warranties of Remote Manufacturers," 50 *Ala.L.Rev.* 509 (1999). A "remote manufacturer" has been identified as being a manufacturer who is not involved in any transaction with and, therefore, is not in privity with the buyer. *Id.* at 510.

Commentary on the UCC has identified a trend toward relaxing requirements of privity in the context of express warranties. One commentator has determined that many courts have allowed the privity requirement to be relaxed in situations in which the advertising of a remote manufacturer is designed to induce a consumer to buy certain goods. 1 Hawkland *Uniform Commercial Code Series* § 2–313:09 (2000) (collecting cases). Under this view of applicable case law, a manufacturer can be found to have created an express warranty, even though the consumer did not buy the goods directly from the manufacturer. *Id.*

One case in particular illustrates the reasoning for such application of these express warranty concepts to remote manufacturers. In *Connick v. Suzuki Motor Co., Ltd.,* 275 Ill.App.3d 705, 212 Ill.Dec. 17, 656 N.E.2d 170 (1995), *aff'd in part and rev'd in part,* 174 Ill.2d 482, 221 Ill.

Dec. 389, 675 N.E.2d 584 (1997), the plaintiff sought to hold Suzuki Motor Co., Ltd. and American Suzuki Motor Corporation liable for express warranties based upon statements of fact made in the owner's manual, the new vehicle limited warranty, and a statement made by the vice president of American Suzuki Motor Corp. in the Wall Street Journal. The court reasoned that because documents, brochures, and advertisements may constitute express warranties, the representations at issue could also be express warranties. *Id.* at 177. The defendants argued that these representations were not actionable as express warranties because there was no privity of contract. The court concluded that the statements were "sufficient promises to establish some contractual relationship with the plaintiffs." *Id.*

The authority within the UCC for attributing such liability is said to be derived from a Comment to the UCC. As explained in the commentary on the UCC, because a UCC Comment states that warranties need not be confined to either sales contracts or to direct parties of such contracts, a sale is not necessary to bring the express warranty concepts into operation. 1 Hawkland UCC Series § 2–313:09.

The parties have not addressed the applicability of these concepts under Alabama law. Through its own research, the court has found no Alabama cases which directly answer whether Alabama law would allow for liability to be imposed on a manufacturer for an affirmative statement of fact which became a part of the basis of a bargain, but the court is aware of two cases which touch on this issue.

In the first of these two cases, the Alabama Supreme Court defined the scope of privity which exists between a buyer and a remote manufacturer. In *Johnson v. Anderson Ford, Inc.,* 686 So.2d 224 (1996), the Alabama Supreme Court stated that where a manufacturer "intended to extend the express warranty directly to the ultimate purchaser," there is privity of contract between the manufacturer and the purchaser, and the purchaser can maintain an action on the warranty. This case indicates that privity is limited to the express warranty itself. This latter proposition has been consistently applied by the Alabama Supreme Court in related contexts. For instance, the court has held that the privity created between the remote manufacturer and the purchaser is not sufficient privity to convert "a manufacturer into a 'seller' for purposes of the commercial code's implied warranty provisions." *Wellcraft Marine v. Zarzour,* 577 So.2d 414 (1990).

The second case which touches on relevant issues in this case is the *Ricwil* decision. As earlier stated, in *Ricwil,* the Alabama Supreme Court determined that a product brochure created an express warranty that was in addition to the general warranty against defects. *Ricwil,* 599 So.2d at 1129. The defendants in that case were a manufacturer and a third-party sales representative. In the course of its discussion, the Alabama Supreme Court held that the trial court was not in error to submit a breach of contract claim to the jury as to the sales representative, finding that there was sufficient evidence relative to the issue of agency to submit the claim to the jury. *Id.* at 1130. In a footnote, the Alabama Supreme Court went on to state the following:

> We note that Dowdy [the sales representative] argues that the trial court erred in submitting the express warranty theory to the jury as against it because, it argues, it was not a 'seller' and it did not make the written descriptions of the Copper–Gard system contained in the product brochure. To the extent that submission of this theory to the jury against Dowdy was error, we deem it merely harmless error, given the trial

court's entry of judgment for Dowdy on its cross-claim against Ricwil.

*Id.* at 1131 n. 1. Of course, through this discussion, the court raises, but does not answer, the question of whether the unintentional creation of an express warranty can be the basis for liability for one who is not a "seller" under the UCC.

The court also notes that the comment in the Alabama UCC states as follows:

the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract. They may arise in other appropriate circumstances such as in the case of bailments for hire. . . . The provisions of Section 7–2–318 on third party beneficiaries expressly recognize this case law development within one particular area. Beyond that, the matter is left to the case law with the intention that the policies of this Act may offer useful guidelines in dealing with further cases as they arise.

*Ala.Code* § 7–2–313, Comment 2.

■ The court takes from this discussion the idea that the extension of the UCC concepts to a non-sales relationship must come from the case law. The case law discussed, however, specifically the *Johnson* decision which places limits on manufacturer for warranty liability, and the *Ricwil* decision which indicates that there may be a willingness to impose liability on a remote manufacturer for affirmative statements of fact, does no definitively state whether a remote manufacturer can be held liable in contract for creating an express warranty by making a statement

of fact or promise which becomes a part of the basis of the bargain. The court finds that it need not answer this question under Alabama law, however, because even assuming that the UCC express warranty concepts can be applied to a remote manufacturer, Manci has failed to create a question of fact as to whether he would be entitled to recover under the requirements for pursuing such a theory.

In its Supplemental Motion for Summary Judgment, GM argues that the Plaintiffs must, and failed to, give timely notice of a breach of express warranty under Alabama's UCC § 2–607.[2] According to GM, filing a lawsuit does not satisfy the UCC's notice requirement. The Plaintiffs do not respond to this argument in any way, other than to point to out that in an earlier-filed brief the Plaintiffs stated that they may have inartfully pled a claim which should have been an express warranty claim.

■ Under Alabama law, notice of breach is a condition precedent to bringing a breach of warranty action, which must be affirmatively pleaded in the complaint. *Hart v. Yamaha–Parts Distributors, Inc.*, 787 F.2d 1468 (11th Cir.1986). No allegation of notice has been pled in this case.

There are Alabama cases which have abrogated the notice requirement for bringing warranty claims in certain circumstances. The Alabama Supreme Court has determined that notice need not be given by a warranty beneficiary who suffers a personal injury. *Simmons v. Clemco Industries*, 368 So.2d 509 (Ala.1979). In so holding, the Alabama Supreme Court stated that there are three justifications for the notice requirement: to prevent

---

**2.** The Alabama Code provides

Where a tender has been accepted:
(a) The buyer must within a reasonable time after he discovers or should have dis-

covered any breach notify the seller of breach or be barred from any remedy . . .
*Ala.Code* § 7–2–607(3)(a).

stale claims, to allow the seller to marshal evidence for a defense, and to allow the seller to correct the defect or mitigate damages. *Id.* at 514. The court reasoned that these policies did not require notice in a situation of personal injury where notice is inconsequential in preventing or mitigating the harm since the injury has already occurred. *Id.* While this case indicates that the notice requirement is not to be automatically applied, the applicability of such a requirement appears to hinge on the, relevance of the policies behind the notice requirement.

■ In a later decision which did not involve personal injury, the Alabama Supreme Court imposed a notice requirement and again indicated the importance which it places on the policies behind the UCC notice requirement. In *Parker v. Bell Ford, Inc.*, 425 So.2d 1101 (1983), a plaintiff filed a complaint against a dealership and against a car manufacturer bringing claims for breach of warranty and other claims. The court first stated, without discussion, that the transaction between the plaintiff, the dealership, and Ford was one that required notice in compliance with the UCC. *Id.* at 1102. The court never identified Ford as a seller, however. *Id.* The court went on to reaffirm that notice is a precondition to recovery. *Id.* These statements by the court indicate that notice provisions ordinarily applied to sellers also applied to a manufacturer in that case. In other words, even though Ford was not a seller, the court applied the notice requirement to the claims brought against Ford and the seller. At the very least, the case stands for the proposition that notice must be given to the seller before the buyer can proceed on an express warranty theory against either the seller or the manufacturer. In addition, of particular significance in the instant case is the *Parker* court's discussion of the policies behind the notice requirement. The court stated that notice serves the purposes of opening

the way for settlement, of minimizing prejudice to the seller, and allowing the seller to make adjustments or replacements or to suggest opportunities for cure, to reduce the seller's own liability and minimize the buyer's loss. *Id.*

A federal district court in this circuit has also stated, albeit in dicta, that under Alabama law, if a plaintiff is a buyer, and not a third party beneficiary of a consumer warranty, the plaintiff must notify the seller of an alleged breach of warranty before being allowed to pursue a warranty action against the remote manufacturer. *Snell v. G.D. Searle & Co.*, 595 F.Supp. 654 (N.D.Ala.1984). The court is also aware of at least one case outside of this jurisdiction, the previously discussed *Connick* decision from Illinois, in which notice provisions from the UCC were applied to an express warranty claim against the remote manufacturer. *See Connick*, 221 Ill.Dec. 389, 675 N.E.2d at 590.

Of those courts which do not require notice to be given to the manufacturer, the majority appear not to require notice on the theory that notice to the seller, which could be passed on to the manufacturer, was sufficient. *See generally* Wanda Wakefield, "Necessity that Buyer of Goods Give Notice of Breach of Warranty to Manufacturer under UCC § 2–607," 24 A.L.R.4th 277 (1983) (collecting cases). In other words, notice must be given to the manufacturer in some fashion, if not directly, then at least through the direct seller. There is no allegation in this case that notice of a claim for express warranty was given to the direct seller, or to GM.

■ In addition to these considerations, the court is also persuaded by the view of some leading commentators on this issue that a non-privity consumer buyer must timely notify a remote manufacturer of alleged defects, at least when the buyer seeks recovery for economic loss, because

if "the manufacturer is to be held responsible for the buyer's losses, it needs the protection of timely notice as much as the buyer's immediate seller." 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 11–10 (4th ed.1995). Accordingly, this court concludes that for remote manufacturers to be held liable for an unintentionally-created express warranty, as are sellers under the UCC, remote manufacturers should be afforded the same protections as sellers, either by way of notice provided directly to them, or through notice provided to them by the direct seller from the buyer.

Having determined that notice is required, the court now turns to the issue of the sufficiency of the notice which was provided in this case. The court recognizes that, generally speaking, the issue of sufficiency of notice is a question of fact for a jury to determine. Where, however, no notice is given, there is no issue of sufficiency for a jury to determine. *See Parker*, 425 So.2d at 1103.

In this case, the Plaintiffs have not responded to GM's argument that they did not provide notice of the alleged breach of the express warranty that the Impala came equipped with a "full size spare." The Complaints contain no allegation of any notice given GM. There is also no allegation that notice was given to the direct seller. Therefore, whether the rule is that notice must be given to the seller, or whether the rule is that notice must be given directly to the manufacturer, the only possible notice given by the Plaintiffs in this case is the Complaint and the Amended Complaints which were filed by the Plaintiffs.

■ In the Alabama Supreme Court's *Parker* decision, a plaintiff had filed a complaint against a car dealership and a manufacturer. The court explained that the facts of the case before it were to be distinguished from an earlier decision

wherein the question of sufficiency of notice was to be presented to a jury because "[i]n this case no notice was given." *Parker*, 425 So.2d at 1103. This distinction was made by the court despite the fact that it was acknowledged that a complaint bringing breach of warranty claims had been filed. The court went on to hold that there was no evidence from which a jury "could reasonably infer that [the plaintiff] gave notice of the defect **prior to the filing of this suit.**" *Id.* at 1103 (emphasis added). Accordingly, at least in the context of economic harm rather than personal injury, the filing of a lawsuit is not considered to be sufficient notice under Alabama law. *See also Hart*, 787 F.2d at 1474 (citing *Parker*, stating that "notice of breach is a condition precedent to bringing a breach of warranty action," and that this notice of breach must be affirmatively pleaded in the complaint). Notice must, therefore, precede the filing of the complaint.

In addition, the Illinois Supreme Court, in the *Connick* decision, also concluded not only that notice had to be given to the remote manufacturer to pursue the express warranty claim, but also that the filing of the lawsuit was insufficient to serve as notice. *Id.* The *Connick* court reasoned that the actual filing of the lawsuit is only sufficient notice where personal injuries are involved, because where no personal injuries are involved, the UCC indicates a preference that contract damages for breach be cured without a lawsuit. *Connick*, 221 Ill.Dec. 389, 675 N.E.2d at 590. The court agrees with this reasoning and finds it supported by the Alabama case law focus on the policies which animate the UCC notice requirement.

Accordingly, this court concludes that the mere filing of a lawsuit in this case did not constitute notice of breach under Alabama law. Assuming, therefore, that a

remote manufacturer can be held liable for unintentionally creating an express warranty under Alabama law, as can sellers under the Alabama UCC, in the absence of any evidence, or even allegation, that any other notice was given by Plaintiff Manci, the court concludes that summary judgment is due to be GRANTED on Plaintiff Manci's express warranty claim.[3]

■ The express warranty claim brought by Plaintiff Hobbs is governed not by Alabama law, but by Louisiana law. GM points out that the cause of action for breach of express warranty under Louisiana law adopts the prescriptive period for redhibition. *See Manning v. Scott–Hixson–Hopkins, Inc.,* 605 So.2d 233, 235 (1992). The prescriptive period for redhibition is four years from the date of purchase, or one year from the date of discovery of the defect if the seller is unaware of the defect, or one year from discovery of the defect by the buyer if the seller knew or is presumed to know of the defect. *La.Civ.Code* § 2534.

■ Plaintiff Hobbs has not responded to the Supplemental Motion for Summary Judgment on this ground. The evidence before this court is that Hobbs purchased her Impala in January 1995, and that sometime in mid–1997, the spare tire was used to replace a flat tire on her Impala. Hobbs Deposition, pages 50, 55–59. The Complaint was filed in this case in August 1999. Under the statutory prescription period for redhibition, therefore, Hobbs' claim either prescribed four years after she purchased her car in January of 1995, or one year after she used the spare tire in mid-August 1997. Accordingly, Hobbs' claim prescribed under the Louisiana statute and summary judgment is due to be

GRANTED to GM on Hobbs' claim in Count I of the Complaint, as amended.

## IV. *CONCLUSION*

For the reasons discussed above, it is hereby ORDERED as follows:

1. The Motion to Dismiss which this court converted to a Motion for Summary Judgment (Doc. # 36), for which this court deferred ruling as to Count 1, and the Supplemental Motion for Summary Judgment as to Count I (Doc. # 107), are GRANTED and judgment is entered in favor of GM and against Plaintiffs Hobbs and Manci on Count I of the Complaint, as amended.

2. The case will proceed on Plaintiff Manci's misrepresentation and unjust enrichment claims.

---

**3.** The court also notes, although it does not decide the issue of sufficiency of notice since no notice recognized by Alabama law was given, that it was not until this court began addressing the motions filed in this case that it even became apparent that the Plaintiffs might be pursuing an express warranty claim.