YATES, Presiding Judge.
Benjamin Wayne Coleman, by his mother and next friend, Leda Coleman,[1] sued Jessie Boyd Smith on August 4, 2000, seeking to recover damages for injuries he sustained in an automobile accident. The case proceeded to trial on October 6, 2003. Smith moved the court for a preverdict judgment as a matter of law (“JML”) at *730 the close of the evidence, which the trial court granted. Coleman appeals. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975.
Our supreme court has stated:
“When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala.1992). For actions filed after June 11, 1987, the nonmovant must present ‘substantial evidence’ in order to withstand a motion. for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmov-ant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala.1992).”
Delchamps, Inc. v. Bryant, 738 So.2d 824, 830 (Ala.1999).
Coleman and Smith were students at Good Hope High School. After school on Friday, October 30, 1998, Smith and fellow student Jamie Coggins were going to get something to eat before a football game in which they were both scheduled to play later that evening. Smith was driving a 1972 GMC pick-up truck. It was a dry and sunny day. Coleman, who was a friend of Coggins’s, asked Coggins if he could go with him and Smith. Both Cog-gins and Smith agreed, and Coleman got into the truck. Coleman sat between Smith and Coggins.
Smith and his father had refurbished the truck by painting it and adding a new bed and tires. They also replaced a worn out “cam” on the engine with a RV cam. Both Smith and his father testified that the restoration work they had done on the truck did not enhance its power or speed. Sometime before leaving the campus on October 30, 1999, Smith and Coggins, who also owned a refurbished truck, became involved in a discussion regarding their trucks. Coggins testified that they discussed how fast the trucks could go. Smith denied that he and Coggins ever discussed how fast their trucks could go. Coggins testified that on the way to the restaurant Smith “punched” the accelerator of the truck and that he told Smith that he was not impressed.
Smith’s route on the date of the accident led them down Industrial Park Road. The evidence indicated that Industrial Park Road is a narrow road but that it is wide enough to allow oncoming traffic to pass. The road was constructed of tar and loose gravel with no painted center lines or shoulder lines. The road has a hill that prevents drivers from seeing oncoming traffic until the drivers reached the crest of the hill.
Coleman testified that as Smith turned onto Industrial Park Road Smith stated that he was going to “open it up” and that Smith then began to accelerate the truck. Coleman stated that as the truck ap *731 proached the “blind hill” he looked at the speedometer and saw that the truck was traveling 55 miles per hour. He stated that he asked Smith to slow down but that Smith continued to accelerate the truck as they approached the hill. Coleman testified that as they crested the hill they were traveling 65 miles per hour and were “dead” in the middle of the road. Coleman, testified that they met an oncoming vehicle and that Smith swerved to the right to avoid hitting the vehicle and veered toward a ditch. Smith’s vehicle “hit some gravel” and skidded out of the ditch and across the road to the left side of the road where it hit two mailboxes before completely crossing back over the road to the right and striking a tree. The state trooper that investigated the accident testified that the truck skidded approximately 400 feet. Smith and Coleman were ejected from the vehicle. Smith, Coleman, and Coggins were taken to the hospital where they were treated for injuries. Coleman eventually underwent surgery for a torn anterior cruciate ligament in his knee.
On cross-examination, Coleman testified that he was not afraid while riding with Smith and that Smith was not “goofing around.” He stated that Smith was traveling in a straight line down the road and that when they first saw the other vehicle at the crest of the hill the other vehicle was in the middle of the road and partially in Smith’s lane of travel. Coleman stated that Smith swerved to avoid hitting the other vehicle and lost control of the truck on the loose shoulder of the road. Coleman further testified on cross-examination that the “only reason,” in his opinion, that Smith went off the shoulder of the road was to avoid the other vehicle and that, otherwise, “[Smith] would have kept going straight down the road.”
Smith testified that as he turned onto Industrial Park Road he was concerned about the loose gravel kicking up and chipping the new paint job on the truck. He stated that he drove slow enough to avoid kicking up the loose gravel and that he estimated his speed to be 35 to 40 miles per hour. Smith stated that he was not “showing off’ and that nobody asked him to slow down. Smith testified that he was on his side of the road as he crested the hill and that the other vehicle was in the middle of the road. He stated that he swerved to the right in order to avoid the other vehicle and that he lost control of his truck in the loose gravel on the shoulder of the road.
On cross-examination, Smith estimated the length of his skid marks to be 170 to 200 feet. He also admitted that “at the most” he may have been traveling 50 to 55 miles per hour at the time of the accident.
Coggins estimated Smith’s speed at the time of the accident to be 35 to 40 miles per hour. He stated that Smith was not racing and was in control of the truck as he traveled on Industrial Park Road. He testified that Coleman never asked Smith to slow down or otherwise complained about Smith’s driving. Coggins further stated that as Smith crested the hill he was on his side of the road and that they met another vehicle that was a quarter of the way on Smith’s side of the road. He stated that Smith swerved to avoid the other vehicle and that Smith lost control of the truck in the loose gravel on the shoulder of the road.
Ricky Smith testified that he was a passenger in a van being driven by his wife on Industrial Park Road at the time of the accident. He stated that his wife was driving on her side of the road when they met a truck on the hill. Ricky testified that the truck was on his wife’s side of the road and that she swerved to avoid hitting the truck. He stated that his wife was driving approximately 30 to 35 miles per *732 hour. Ricky stated that he heard the truck coming before he saw it, and he estimated the truck’s speed to be approximately 60 to 65 miles per hour.
It is undisputed that Alabama’s guest statute is applicable to the facts of this case. That statute provides as follows:
“The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle.”
§ 32-1-2, Ala.Code 1975. Smith argued in support of his motion for a JML that evidence of his rate of speed, by itself, does not demonstrate wantonness and that Coleman failed to present any other evidence creating a question of fact as to whether Smith was operating his vehicle in a wanton manner at the time of the accident. Coleman argued in opposition to Smith’s motion that evidence of Smith’s rate of speed coupled with evidenbe of the conditions of the road created a question of fact as to whether Smith’s conduct was wanton at the time of the accident.
Our supreme court has explained that “wantonness, which requires some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission, is not to be confused with negligence (i.e., mere inadvertence).” Ex parte Anderson, 682 So.2d 467, 470 (Ala.1996). Our supreme court has further stated:
“ ‘ “Wantonness” is statutorily defined as “[cjonduct which is carried on with a reckless or conscious disregard of the rights or safety of others.” Ala.Code 1975, § 6-11-20(6X3). “Wantonness” has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff.’ ”
Barker v. Towns, 747 So.2d 907, 909 (Ala.Civ.App.1999), quoting Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998). Evidence of the rate of speed at which a vehicle was traveling does not necessarily demonstrate wantonness; however, evidence of the rate of speed, coupled with other circumstances, may demonstrate wantonness. Hornady Truck Line, Inc. v. Meadows, 847 So.2d 908 (Ala.2002). Additionally, our supreme court has stated that “ ‘[i]f there is any evidence from which a jury can reasonably infer wantonness, the issue should be presented to the jury.’” Barker, 747 So.2d at 909, quoting Sellers v. Sexton, 576 So.2d 172, 175 (Ala.1991).
The evidence viewed in a light most favorable to' Coleman indicates that Smith was traveling between 55 and 65 miles per hour and was in the wrong lane at the time of the accident. The road was narrow, with no delineated center line, and consisted of tar and loose gravel. Additionally, the road had what was described as a “blind hill” that prevented oncoming traffic from seeing each other until they crested the hill. After reviewing the record, we conclude that the evidence of Smith’s rate of speed, when coupled with evidence of the conditions of the road in question, raised a question of fact to be resolved by the jury as to whether Smith’s actions rose to the level of wantonness as defined by our supreme court. Accordingly, we must reverse the judgment of the trial court and *733 remand this case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY and PITTMAN, JJ., concur.
THOMPSON and MURDOCK, JJ., concur in the result, without writing.

. Benjamin Wayne Coleman was a minor at the time this action was filed. During the pendency of the action, however, he reached the age of majority.