THOMAS, Judge.
 

 Sandra B. Clark sued Larry Allen Kind-ley, alleging that Kindley had negligently and wantonly caused a collision between the vehicle she was driving and the trailer attached to the pickup truck Kindley was driving. Kindley answered, asserting, among other things, that Clark had been contributorily negligent. Kindley filed a motion for a judgment as a matter of law (“JML”) on the wantonness claim, which the trial court granted. The negligence claim was tried to a jury, which rendered a verdict in favor of Kindley.
 

 The trial court entered a judgment on the verdict; Clark filed a postjudgment motion, which was denied by operation of law. Clark timely appealed to the Alabama Supreme Court. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975. On appeal, Clark raises two issues: that the trial court erred (1) by entering a JML on the wantonness claim and (2) by failing to charge the jury on “coasting,” as defined in § 32-5A-57(a), Ala.Code 1975. We affirm in part, reverse in pai’t, and remand.
 

 The evidence at trial indicated that on December 22, 2003, Kindley, an automobile mechanic, purchased a vehicle that was not in running condition in order to repair it. Kindley loaded the vehicle onto a trailer attached to his pickup truck and began towing the vehicle to his home, a distance of approximately 20 miles. Kindley began the trip at dusk. Before setting out, he checked the lights on his truck and on the trailer and determined that they were working. Kindley experienced no problems until he was approximately a mile from his home on Highway 77, an unlighted county road, on which the posted speed limit was 45 miles per hour. Kindley was ascending a hill when his pickup truck began to smoke. He determined that the truck was leaking transmission fluid but that his headlights were still woi'king. Kindley reduced his speed to five or six miles per hour and proceeded over the hill. At the crest of a second hill, the headlights of his truck began to flicker and the engine sputtered and quit. Kindley stated that after his truck lost power, he did not know whether the taillights of the trailer were working. Kindley was proceeding over the hill, still going five or six miles per hour, when he noticed the headlights of a vehicle behind him. He continued toward his driveway, which, according to the undisputed evidence, was 641 feet from the spot at which his truck had lost power. Kind-ley was turning left into his driveway when Clark’s vehicle struck the trailer attached to Kindley’s truck, flipped, and landed upright in Kindley’s front yard.
 

 Clark testified that on the occasion in question she was driving at the speed limit on Highway 77. It was completely dark
 
 *1007
 
 outside and the roadway was not lighted. Clark said that she did not see a vehicle ahead of her until her headlights illuminated the trailer attached to Kindley’s truck; at that point, Clark said, she did not have time to stop. Instead, she swerved to pass Kindley on the left and that is when the collision occurred. Clark testified that there were no lights on either Kindley’s truck or the trailer.
 

 Kindley testified that between the spot where his truck had lost power and his driveway, there were no turn-offs or safe shoulders on which to pull off the road. He said that there was a drop-off on each side of the road before he reached his driveway. John Godwin, an investigator in the law office of Clark’s counsel, testified, however, that he had visited and photographed the area and that there were level shoulders on both sides of the road leading to Kindley’s driveway.
 

 On cross-examination, Kindley testified as follows:
 

 “Q. [By Clark’s counsel] Did it go through your mind when you lost power to your vehicle at the top of that hill, Mr. Kindley — you had knowledge that somebody — there were lights behind you coming; right?
 

 “A. Yeah.
 

 “Q. I guess you suspect if they’re driving, they’re probably going about the speed limit?
 

 “A. Yes.
 

 “Q. Did it cross your mind at the crest of that hill when you lost power to the vehicle that you better get out of the way since you’re only going five or six miles an hour?
 

 “A. Yes.
 

 “Q. And your choice was to coast down to your driveway; correct?
 

 “A. Yes.
 

 “Q. And then attempt to turn in your driveway?
 

 “A. Yes.
 

 [[Image here]]
 

 “Q. So .... you knew somebody was behind you, you knew it was dark, you knew it was a blind hill. You made the choice to coast as opposed to pull somewhere, right?
 

 “A. Yes.”
 

 Standard of Review
 

 In
 
 Delchamps, Inc. v. Bryant,
 
 738 So.2d 824 (Ala.1999), the Alabama Supreme Court set out the standard for reviewing a preverdict JML:
 

 “When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in granting or denying a JML.
 
 Palm Harbor Homes, Inc. v. Crawford,
 
 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution.
 
 Carter v. Henderson,
 
 598 So.2d 1350 (Ala.1992). For actions filed after June 11,1987, the nonmovant must present ‘substantial evidence’ in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975;
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury.
 
 Carter,
 
 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmov-ant and entertains such reasonable inferences as the jury would have been free to draw.
 
 Motion Industries, Inc. v. Pate,
 
 678 So.2d 724 (Ala.1996). Regard
 
 *1008
 
 ing a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling.
 
 Ricwil, Inc. v. S.L. Pappas & Co.,
 
 599 So.2d 1126 (Ala.1992).”
 

 738 So.2d at 830. We must, therefore, determine whether Clark presented substantial evidence from which a jury could reasonably find that Findley’s conduct amounted to wantonness.
 

 I.
 

 The Alabama Legislature has defined “wantonness” as “[cjonduct which is carried on with a reckless or conscious disregard of the rights or safety of others,” § 6-ll-20(b)(3), Ala.Code 1975. Wantonness involves the “conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.”
 
 Alfa Mut. Ins. Co. v. Roush,
 
 723 So.2d 1250, 1256 (Ala.1998). “The ‘knowledge’ of the defendant is ‘the
 
 sine qua non
 
 of wantonness.’ ”
 
 Norris v. City of Montgomery, 821
 
 So.2d 149, 156 n. 9 (Ala.2001) (quoting
 
 Ricketts v. Norfolk Southern Ry.,
 
 686 So.2d 1100, 1106 (Ala.1996)(quoting, in turn,
 
 Henderson v. Alabama Power Co.,
 
 627 So.2d 878, 882 (Ala.1993))). However, “[t]o prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff.”
 
 Alfa Mut. Ins. Co. v. Roush,
 
 723 So.2d at 1256 “ ‘Wantonness is a question of fact for a jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness.’ ”
 
 Allen v. Hill,
 
 758 So.2d 574, 576 (Ala.Civ.App.1999)(quoting
 
 McDougle v. Shaddrix,
 
 534 So.2d 228, 231 (Ala.1988)).
 

 We cannot say that there was a total lack of evidence from which a jury could reasonably infer that Findley’s conduct was wanton. Findley testified that soon after his headlights flickered and his truck engine sputtered and quit, he noticed the headlights of a vehicle approaching him from the rear. He acknowledged that it had “cross[ed] [his] mind at the crest of that hill when [he] lost power to the vehicle that [he had] better get out of the way since [he was] only going five or six miles an hour.” He also acknowledged that, instead, he chose to “coast down [the hill] to [his] driveway.” Although Findley stated that there was no safe place to pull off the road before he reached his driveway, Clark presented oral and photographic evidence to the contrary. Viewing the evidence in the light most favorable to Clark, we conclude that there existed a question of fact as to whether Findley was aware of and recklessly indifferent to the following dangers: (1) driving a truck and trailer without lights on a dark country road, and (2) traveling at such a slow rate of speed that a motorist traveling at the speed limit might attempt to pass him on the left as he was making a left turn into his driveway. Therefore, we hold that Clark’s wantonness claim should have been presented to the jury.
 
 See Coleman v. Smith,
 
 901 So.2d 729 (Ala.Civ.App.2004);
 
 Hicks v. Dunn,
 
 819 So.2d 22 (Ala.2001).
 

 II.
 

 Clark contends that the trial court erred by failing to instruct the jury that “coasting,” prohibited by § 32-5A-57(a), Ala.Code 1975, is a violation of the “Rules of the Road,” and constitutes prima facie evidence of negligence. Section 32-5A-57(a) provides:
 

 “The driver of any motor vehicle when traveling upon a down grade shall not coast with the gears or transmission of such vehicle in neutral or the clutch disengaged.”
 

 At trial, the parties and Clark’s counsel referred to Findley’s continuing down the
 
 *1009
 
 hill at a slow rate of speed after his truck transmission became inoperative as “coasting.” Notwithstanding that characterization, however, it is arguable that Kindley was not coasting within the meaning of § 32-5A-57(a) because the gears of his truck were not in neutral and his clutch was not disengaged. It appears that the legislature has defined “coasting” to require intentional action on the part of the operator to put the vehicle into a coasting status. The evidence at trial, however, indicated that Kindley’s vehicle suffered a mechanical problem and that Kindley took no action to put the vehicle into a coasting status.
 
 Compare Hardy v. Sicuranza,
 
 133 A.D.2d 138, 139, 518 N.Y.S.2d 812, 813 (1987) (holding that the trial judge erred in failing to charge the jury on coasting as applicable to a driver who, while operating her vehicle at the crest of a hill, on wet pavement, observed flashing red warning lights on a stationary truck approximately 600 feet away, applied the brakes, and shifted her vehicle into neutral).
 

 Although the trial court did not charge the jury on coasting, it properly charged the jury on three other “Rules of the Road” applicable to the facts of the case: § 32-5-51, Ala.Code 1975 (towing or hauling a disabled vehicle); § 32-5-240, Ala. Code 1975 (required lighting equipment and illuminating devices of vehicles); and § 32-5A-174(a), Ala.Code 1975 (minimum-speed regulation). Section 32-5A-174(a), relating to minimum speed, provides:
 

 “No person shall drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law.”
 

 By instructing the jury on the minimum-speed regulation, the trial court presented the jury with the same theory of the case that Clark, by requesting the coasting instruction, sought to have put before the jury — that Kindley’s extremely slow speed was a violation of the “Rules of the Road,” was prima facie evidence of negligence, and was a factor in causing the collision. Thus, we hold that the error, if any, in failing to charge the jury on coasting was harmless because it did not injuriously affect Clark’s substantial rights.
 
 See
 
 Rule 45, Ala. RApp. P.
 

 The judgment of the Franklin Circuit Court is affirmed as to the negligence claim, reversed as the wantonness claim, and the cause is remanded for a new trial on the issue of wantonness.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 THOMPSON, P.J., concurs in the result, without writing.