Marty Clark sued Dr. Ronald Hillyer; Orthopaedic Clinic of East Alabama, P.C.; Lee County Hospital Board; and Allied Healthcare Products, Inc. (hereinafter "Allied Healthcare"), alleging liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") because of an alleged defective design of a Gomco thermotic drainage pump; failure to warn; breach of warranty of merchantability; and negligence.[1] Clark was initially treated by Dr. Hillyer at Lee County Hospital for a fractured arm, which later became infected and required drainage. Clark alleges that his eighth cranial nerve was damaged by Dr. Hillyer's negligent administration of an antibiotic called Gentamicin and by the defective nature of the Gomco pump, which was manufactured by Allied Healthcare and which was used to drain fluids from Clark's arm. Clark claims that, as a result of Dr. Hillyer's negligence and the defectiveness of the Gomco pump, he experiences vertigo, loss of balance, and ringing in his ears.
The trial court entered a summary judgment for Allied Healthcare on Clark's AEMLD count on March 7, 1989, holding that there was no evidence that the Gomco pump was defective. On September 11, 1991, the trial court entered a summary judgment for Allied Healthcare and Lee County Hospital on all counts and made that judgment final pursuant to Rule 54(b), A.R.Civ.P.[2] In its September 11, 1991, order, *Page 903 
the trial court stated the following with regard to the breach of warranty claim against Allied Healthcare:
 "Plaintiff makes [a] claim of breach of warranty against Allied Healthcare Products, Inc. For reasons otherwise reflected in the previous orders of this Court, plaintiff is precluded from producing any expert testimony that the product involved in this litigation (Gomco Pump) was defective. This Court previously granted the defendant's motion for summary judgment based upon the Alabama Extended Manufacturer's Liability Doctrine in that there was no proof of defect. In order to sustain a cause of action under breach of warranty, plaintiff must prove the existence of such warranty, breach, and proximate causation of damages.
 "In support of its Motion for Summary Judgment, the defendant relies upon the deposition and affidavit testimony of Dr. Hillyer. The problem about which plaintiff makes a claim of defect with the pump is that on occasion, the ingress and egress tube from the pump would become clogged, requiring irrigation. Dr. Hillyer testified that this clogging was not indicative of a defect with the pump, but rather, an indication that the tubes required routine irrigation. Examination of plaintiff's expert's testimony (Dr. Gordon) reveals no evidence that the pump was defective or malfunctioned.
 "In opposition to this testimony, plaintiff has not shown the Court any evidence that the device manufactured by the defendant malfunctioned or was defective. Plaintiff only points to drainage tubes that required periodic irrigation. This is not evidence of a defect or breach of warranty with regard to the pump. Despite the fact that this Court is of the opinion that the plaintiff cannot prove a claim to be submitted to the jury under the Alabama Extended Manufacturer's Liability Doctrine or under the product liability theory of breach of warranty, there is even a more compelling reason why the plaintiff's claims against Allied Healthcare Products, Inc., are due to [be] dismissed. During oral argument, the plaintiff admitted there was no evidence that the alleged failure of the Gomco Pump had any causal relationship to the injury (eighth cranial nerve damage) which is the basis of the underlying action. Where there is no evidence of a causal relationship between a breach of warranty and injury, such claim is not actionable.
 "In all candor, counsel for plaintiff stated in open Court that the claims against Allied Healthcare Products, Inc., relate only to [the] pain and swelling of plaintiff's arm during a period of time that the drains attached to the pump required irrigation.
 "Therefore, even if plaintiff [were] able to prove a prima facie product liability case against Allied Healthcare Products, Inc. (which this Court is ruling that it cannot), such claim for injury would be separate and distinct from any claims for injury plaintiff is pursuing against Dr. Ronald Hillyer. Accordingly, even if plaintiff were able to prove a prima facie case against Allied Healthcare Products, Inc., under some product liability/breach of warranty theory, then the Court would order separate trials from plaintiff's claim against Dr. Ronald Hillyer."
We find no evidence in the record that the Gomco pump was defective in any way. In opposition to Allied Healthcare's motion for summary judgment, Clark relied on his own deposition; the deposition of his expert, Dr. Everett J. Gordon; certain nurses' notes; and the affidavit of Clark's mother. Dr. Gordon's testimony focused largely on the giving to Clark of Gentamicin; he never testified that the Gomco pump malfunctioned or was defective. Although Clark quotes extensively in his brief from portions of Dr. Hillyer's deposition to the effect that the pump was not functioning properly, that deposition is not contained in the record. The one portion of Dr. Hillyer's deposition that is in the record was attached to Allied Healthcare's motion for summary judgment, and it contained the following:
 "Q. Dr. Hillyer, I represent the manufacturer of Gomco pumps. We *Page 904 
don't know, at this time, whether we manufactured the one that was being used or not. But, at any rate, we are being sued in this case, and I'd like to ask you some questions relative to that, please, sir. Was there any malfunction of the Gomco machine or pump to your knowledge?
"A. Not that I recall.
 "Q. The mere fact that on some occasions the I.V. solution would not be flowing through, from the ingress tube to the egress tube out to wherever it goes does not mean there is any malfunction, does it sir?
"A. No.
 "Q. In fact, you left orders to the nursing personnel to change the ingress and egress tubes on a twice daily basis, did you not? I think it was every 12 hours to be specific.
"A. That's correct."
Dr. Hillyer's affidavit was also attached to Allied Healthcare's motion for summary judgment, and it contained the following statement: "At no time during my treatment of Mr. Clark or during his hospitalizations at Lee County Hospital, did I see a Gomco Pump, manufactured by Allied Healthcare Products, perform in a defective manner so as to cause injury or damage to Mr. Clark." Because Clark provided no evidence to rebut Allied Healthcare's prima facie showing that the Gomco pump was not defective, the summary judgment in its favor was proper on all counts.
In its order entering a summary judgment for Lee County Hospital, the trial court found that there was no evidence that a nurse or employee of the hospital was negligent and that "[c]ounsel for plaintiff stated there was no such evidence or claim." The trial court also wrote:
 "There is no evidence . . . to support the claim that the Lee County Hospital controlled or reserved the right to control the manner by which Dr. Hillyer, an orthopedic surgeon, prescribed or monitored the administration of medication through policies, procedures or otherwise. Accordingly, plaintiff's claims against the hospital based upon some agency relationship with Dr. Hillyer are likewise due to be dismissed."
The gist of Clark's claims against Lee County Hospital is that it utilized an allegedly defective pump and that it should be held vicariously liable for Dr. Hillyer's allegedly negligent treatment of him. Clark has presented no evidence of any employment or agency relationship between Dr. Hillyer and Lee County Hospital or, as the trial court found, that the hospital reserved the right to control the manner in which Dr. Hillyer treated Clark. Thus, the only way in which the hospital could possibly be liable for Dr. Hillyer's actions with regard to Clark would be under the "corporate liability theory" discussed recently in Humana Medical Corp. of Alabama v.Traffanstedt, 597 So.2d 667 (Ala. 1992) (on rehearing ex mero motu). In that case, Clakey Traffanstedt sued Dr. Thomas Holmes, the doctor who had operated on him, and Humana Medical Corporation of Alabama, doing business as Humana Hospital Shoals, the hospital where Dr. Holmes had staff privileges, for injuries Traffanstedt received following back surgery. The jury returned a verdict for Dr. Holmes and against the hospital. Applying the corporate liability theory, this Court held that the verdicts were inconsistent and reversed, remanding the case for a new trial with regard to both defendants.
In Darling v. Charleston Community Memorial Hospital,33 Ill.2d 326, 211 N.E.2d 258 (1965), cert. denied, 383 U.S. 946,86 S.Ct. 1204, 16 L.Ed.2d 209 (1966), the first case to adopt the corporate liability theory, the Supreme Court of Illinois held that it was not error for the trial court to charge the jury that the hospital had the duty to supervise the competence of its staff members. Since the decision in Darling, that doctrine has been described as "impos[ing] upon a hospital a direct and independent responsibility to its patients of insuring the competency of its medical staff and the quality of medical care provided through the prudent selection, review and continuing evaluation of the physicians *Page 905 
granted staff privileges." Elam v. College Park Hospital,132 Cal.App.3d 332, 345, 183 Cal.Rptr. 156, 164 (1982).
In Humana Medical Corp. of Alabama v. Traffanstedt, supra, the case was submitted to the jury against Humana on Traffanstedt's claims alleging negligent and wanton failure to monitor and supervise Dr. Holmes. Here, Clark did not make such an allegation against Lee County Hospital. Paragraph seven of Clark's complaint reads, in part:
 "Plaintiff avers that the defendants, Dr. Ronald W. Hillyer, Orthopaedic Clinic of East Alabama, P.C., and Lee County Hospital Board, negligently treated or cared for plaintiff at the times and places as aforesaid, and plaintiff avers as a proximate consequence of said negligence of the defendants, plaintiff was injured and damaged as follows. . . ."
Thus, Humana is distinguished from the present case by the nature of the allegations against Lee County Hospital. Clark attempts to hold Lee County Hospital liable for an isolated incident rather than for failing to monitor and supervise Dr. Hillyer. For that reason, the summary judgment for Lee County Hospital was also proper on all counts.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and INGRAM, JJ., concur.
[1] Clark amended his complaint on November 3, 1981, to substitute Allied Healthcare Products, Inc., for Chemetron Medical Products, Inc.
[2] The claims against Dr. Hillyer and Orthopaedic Clinic of East Alabama, P.C., are still pending.